IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RALPH H. JURJENS, III,

       Petitioner,

 v.

MIKE DITTMAN,

       Respondent.

OPINION & ORDER

14-cv-462-jdp

---

  Petitioner Ralph H. Jurjens, III is currently in the custody of the Wisconsin Department of Corrections at the Columbia Correctional Institution. He seeks a writ of habeas corpus under § 28 U.S.C. 2254, challenging his state-court conviction following an incident in which he broke into the home of a woman with whom he had been in a relationship and beat her in front of two children. Jurjens's petition is now fully briefed and ready for a decision.

  I reviewed Jurjens's petition and allow him to proceed on five claims: (1) he did not make a knowing and intelligent plea; (2) his Sixth Amendment rights were violated when the trial court did not allow him to proceed pro se; (3) his original trial-court counsel was ineffective; (4) his third trial-court counsel was ineffective; and (5) he was given an unconstitutionally excessive sentence. Almost all of his ineffective-assistance-of-counsel-claims are interrelated with his claim that he did not make a knowing and intelligent plea. Jurjens also presents what he calls new evidence showing that he was actually innocent of the burglary-to-commit-battery charge, and he seeks to have the court either consider the evidence as part of a new claim.

  After considering the parties' submissions, I conclude that none of Jurjens's claims merit habeas relief, including his claim relating to new evidence. Accordingly, I will deny the petition.

FACTS

I draw the following facts from the petition, briefs, and state-court records. Jurjens's habeas petition concerns his conviction in La Crosse County Case No. 2010-CF-188. As recounted by the Wisconsin Court of Appeals, *see State v. Jurjens*, No. 2012AP562-CRNM, 2013 WL 12183508 (Wis. Ct. App. Oct. 28, 2013), the criminal complaint stated that Jurjens broke a window to enter the home of Kimberly Maass, a woman with whom he had a prior relationship. He beat and threatened to stab Maass in front of her two children, one of whom was his child as well. He beat his teenage niece and broke her cell phone when she attempted to call 911. Jurjens later wrote to Maass, attempting to influence her testimony.[1]

Jurjens was charged with ten counts. After a plea deal, he was convicted of five: child abuse, damage to property in a domestic-abuse situation, intimidation of a victim in a domestic-abuse situation, intimidation of a witness, and burglary to commit a battery, all as a habitual criminal. The other five charges—recklessly endangering safety, battery, criminal trespass, causing mental harm to a child, and intimidating a witness—were dismissed and read in as part of the plea agreement. The trial court imposed consecutive sentences totaling 27 years of initial confinement in prison, followed by 18 years of extended supervision. Dkt. 15-1.

Jurjens moved to withdraw his guilty plea and the trial court held an evidentiary hearing on the motion. Jurjens focused on challenging the effectiveness of Attorney Thomas Huh, his first of three attorneys in the trial court, on the ground that he failed to convey an earlier plea offer to Jurjens. The court rejected this challenge and reaffirmed the conviction. Dkt. 15-5.

---

[1] The parties did not submit the original or amended criminal complaints, but they do not dispute the court of appeals's summary.

On direct appeal, Jurjens's appointed counsel filed a no-merit appeal, which Jurjens contested. The Wisconsin Court of Appeals addressed Jurjens's request to withdraw his plea, reviewed the transcript of the plea hearing, and concluded that there was no arguable basis for withdrawal. The Wisconsin Court of Appeals also concluded that "no other arguable basis for reversing the judgment of conviction" existed, and "any further appellate proceedings would be wholly frivolous." *Jurjens*, 2013 WL 12183508, at *3. Jurjens filed a motion for reconsideration that was denied by the court of appeals. Dkt. 15-3. The Wisconsin Supreme Court summarily denied Jurjens's petition for review. Dkt. 15-4.

Jurjens seeks federal habeas corpus relief under 28 U.S.C. § 2254. During the pendency of his petition, Jurjens obtained an affidavit from Maass, stating that the Jurjens lived in her home at the time of incident. Jurjens asks the court to consider this new evidence in deciding his habeas petition, contending that it shows that he did not commit burglary.

ANALYSIS

**A. Consent**

Before discussing the merits of the habeas petition, I will address a preliminary matter. The parties submitted a form in which they both consent to a magistrate judge hearing the case. Dkt. 14. Under 28 U.S.C. § 636(c)(1), the district court may refer a case to a magistrate judge when all parties agree to do so. But the court retains discretion to retain jurisdiction over a case even when both sides consent to a magistrate judge's jurisdiction. I see no reason to transfer the case to Magistrate Judge Stephen Crocker, particularly given that I have already reviewed materials in this case twice, in screening the petition under Rule 4 and in denying

Jurjens's previous motion to expand the record with the Maass affidavit. So I will deny the parties' joint motion.

**B. Review under § 2254(d)**

This court's authority to issue habeas corpus relief for persons in state custody is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This court may issue a writ under the "contrary to" clause of § 2254(d)(1) if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court opinions but unreasonably applies it to the facts of the particular case. *Id*. at 407–08.

This standard places a high burden on the petitioner. *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013) ("This standard . . . is 'difficult to meet.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011))). "Clearly established law" must be set out in the holdings of

Supreme Court decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). "[A]n 'unreasonable application of' those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id*. (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). Rather, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The relevant state-court decision for this court's review is the opinion issued by the Wisconsin Court of Appeals, because it was the last state court to review the merits of Jurjens's claims. *Stevens v. McBride*, 489 F.3d 883, 902 n.2 (7th Cir. 2007).

1. **Voluntary plea**

The main focus of Jurjens's claims is that his plea was not knowing, intelligent, and voluntary because of a host of defects in his proceedings, including ineffective assistance of counsel and the court's failure to warn him that he was waiving his ability to appeal various non-jurisdictional defects in the proceedings.

As a starting point, I conclude that the court of appeals relied upon the correct constitutional standard when assessing the voluntariness of the plea. The court cited Wisconsin authorities discussing the voluntariness of pleas. *Jurjens*, 2013 WL 12183508, at *1 (citing Wis. Stat. § 971.08; *State v. Hoppe*, 2009 WI 41, ¶ 18, 317 Wis. 2d 161, 765 N.W.2d 794; *State v. Bangert*, 131 Wis. 2d 246, 266–74, 389 N.W.2d 12 (1986)). The state standards are sometimes stated in terms that sound more expansive than what is constitutionally required, but courts have acknowledged that "the Wisconsin standard that a plea must be knowingly, intelligently, and voluntarily entered is the same as the constitutional due process standard." *Warren v. Baenen*, 712 F.3d 1090, 1102 (7th Cir. 2013). Other courts have determined that this is

sufficient to place a petitioner's claims under § 2254(d) review, *see Collins v. Meisner*, No. 11-C-620, 2012 WL 2814140, at *8 (E.D. Wis. July 9, 2012) ("the court of appeals identified the correct constitutional standard" by citing to *Bangert*); *Tyler v. Berge*, No. 04-C-525-C, 2004 WL 3091176, at *5 (W.D. Wis. Dec. 17, 2004) ("The state courts relied heavily on [Bangert], which adopted these constitutional standards in the context of a state court guilty plea."); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (noting that § 2254(d) does not require citation to United States Supreme Court cases, or even an awareness of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them").

To satisfy due process, a guilty plea must be knowingly, voluntarily, and intelligently entered. *See, e.g.*, *Parke v. Raley*, 506 U.S. 20, 28–29 (1992); *Brady v. United States*, 397 U.S. 742, 747–48 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). To enter a voluntary and intelligent plea, a defendant must have: (1) full awareness of the plea's "direct consequences," *Brady*, 397 U.S. at 755; (2) "real notice of the true nature of the charge against him," *Henderson v. Morgan*, 426 U.S. 637, 645 (1976); and (3) an understanding of "the law in relation to the facts," *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Whether a plea was entered knowingly and voluntarily is determined from all of the relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749. Guilty pleas "are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). As a result, the defendant bears the burden of proving that the plea he entered was involuntary or unintelligent. *Virsnieks*, 521 F.3d at 715 (citing *Marx v. United States*, 930 F.2d 1246, 1250 (7th Cir. 1991)).

The court of appeals explained that, on its face, the plea had no defects:

> The State agreed to dismiss and read in five other charges as part of the plea agreement. The plea agreement reduced Jurjens'

> sentence exposure by fifty years. The circuit court conducted a standard plea colloquy, inquiring into Jurjens' ability to understand the proceedings and the voluntariness of his plea decisions, and further exploring his understanding of the nature of the charges, the penalty ranges and other direct consequences of the pleas, and the constitutional rights being waived. The court made sure that Jurjens understood that the court would not be bound by any sentencing recommendations and could impose the maximum penalties. In addition, Jurjens submitted a signed plea questionnaire, and he does not claim to have misunderstood any information explained on that form.
>
> As to the factual basis for the pleas, Jurjens acknowledged that the allegations set forth in the complaint were accurate. . . . Jurjens also admitted to his status as a repeat offender in open court.

*Jurjens*, 2013 WL 12183508, at *1 (citations omitted).

   a. **First plea offer**

The main issue in Jurjens's state-court postconviction motion was his contention that his first attorney, Thomas Huh, was ineffective by failing to convey a May 2010 plea offer to him. That offer, involving a different permutation of counts to which Jurjens would have pleaded guilty, would have exposed him to a maximum 51-and-one-half-year sentence. (The plea deal he ultimately took exposed him to a maximum 51-year sentence.)

In his habeas petition, he brings claims that both Huh and his third attorney, Russell Hanson (who represented Jurjens at his plea) were ineffective for failing to disclose the May 2010 plea offer. Jurjens does not develop this claim in his briefs, but I take his position to be that he would not have accepted the second deal had he known about the first one. He stated the following in his brief to the Wisconsin Supreme Court:

> The first plea offer May 13, 2010 exposed the defendant to 51.5 years and the March 1, 2011 plea deal exposed defendant to 51 years. Had the defendant known of the first plea deal when the second was offered there is no way he would have accepted the second deal after sitting 14 months in a miserable county jail to have the prosecutor shave six lousy months off the first deal. That

7

> is illogical. . . . Had the circuit court been truly going off of evidence and credibility determinations, it would have found the defendant would have rejected the second offer and went to trial.

Dkt. 15-5, at 10. At the postconviction hearing, he said something similar:

> [Jurjens]: I would not have taken that deal if I would have known that I sat seven, eight months for six months off the original plea deal? I wouldn't have taken it.
>
> [District attorney]: Oh. So you're saying when you actually pled guilty in March of 2011, you're saying you wouldn't have done it had you known there was a different offer out there earlier?
>
> [Jurjens]: Right, because it would have been—if—if you offered me that deal in May and then it's March and you say, okay, well, here you go. I'm going to offer you this one. It's six months off. I know you sat 14 months in jail, but I'm going to offer you this deal with six months off the first deal I offered back in May, I don't know what—I don't know what criminal would.

*Id*. at 96–97.

The circuit court approached this claim discussing the standard for voluntariness of a plea along with the standard for ineffective assistance of counsel. To show ineffective assistance of counsel, Jurjens needs to show that his counsel's performance fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). He must also prove prejudice, which is met in a plea-withdrawal case by showing that but for counsel's performance, he would not have pleaded guilty and instead would have gone to trial. *Id*. at 694; *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The circuit court did not believe Jurjens when he said that his plea decision would have been different had he known about the previous offer. The judge stated the following at the conclusion of the plea-withdrawal hearing:

> So I will turn then to the prejudice prong. As I indicated in the beginning and during one of my questions for Mr. Jurjens, he is not a shrinking violet. He is somebody who is fully capable if he

> wanted to go to trial of demanding that a trial be set. . . . Had he wanted to go to trial then, he clearly, I think, is an individual who would have asserted that right.
>
> . . .
>
> This is a case where the defense wants me to say "what if?" . . . What if he had known about this offer before he entered his plea? Would he have gone to trial or not? I think that that question can best be answered by a review of the plea colloquy itself and the decisions that were made. I think that the decision Mr. Jurjens made at that time was freely, voluntarily and intelligently made. He knew what the plea offer was. He knew what his exposure was. He knew what he was giving up. He knew what the potential consequences were to him. And I don't think that those things are capable of dispute. It is a case where Mr. Jurjens knew entirely what he was doing.
>
> This is a situation where he wants me to believe, because a worse plea offer was made earlier, that he would not have accepted a better plea offer later. The fact that he sat in jail for a long period of time does not change that analysis, because he gets and he's gotten credit for all of that time, in any event.

*Id*. at 118–20.

The Wisconsin Court of Appeals addressed that ruling as follows:

> We can infer that the court rejected Jurjens' claim that he would have gone to trial if he had known about the first offer based upon the court's additional comments that it believed Jurjens knew exactly what he was doing when he entered his pleas, and from its subsequent conclusion that Jurjens had failed to establish prejudice.

*Jurjens*, 2013 WL 12183508, at *2.[2]

---

[2] The court of appeals did not explicitly mention *Strickland* and *Hill* in its opinion, but that is not necessary. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam) ("We have held that a state court need not even be aware of our precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them." (internal quotation omitted)). Given the court of appeals's discussion referring to the circuit court's evaluation of the potential prejudice arising from the failure to disclose the prior plea offer, it is clear that the court applied the correct ineffective-assistance-of-counsel standard.

9

Jurjens fails to show that the state-court decisions applied those standards unreasonably, particularly because I must presume that all factual determinations made by the state courts, including credibility determinations, are correct, unless rebutted by clear and convincing evidence. *Murrell v. Frank*, 332 F.3d 1102, 1112 (7th Cir. 2003); 28 U.S.C. § 2254(e)(1). The circuit court made a credibility determination about whether Jurjens really would have rebuffed the second plea offer had his lawyer shared the first one with him. All Jurjens presents to overcome this factual finding is his statement that it would be illogical to take the second deal given how little of an improvement it was.

Jurjens's logic here is not compelling: he seems to suggest that the second offer was so little of an improvement over the first offer that anyone would have found the second offer insulting. But even if it was insulting to him, it is unclear to me why a defendant would reject the marginally improved offer to spite the district attorney and gamble on a potentially much larger sentence following a trial. Ultimately, even if there were some common-sense appeal to Jurjens's position, it is not my role to determine as a matter of first instance whether Jurjens truly would have withdrawn his plea. The circuit court did not buy this after-the-fact explanation, and Jurjens's argument falls far short of showing by clear and convincing evidence that the state courts were wrong to consider his testimony not credible. *See Murrell*, 332 F.3d at 1112 ("trial judge has . . . the best opportunity to observe the verbal and non-verbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." (citations and internal quotations omitted)).

Given that the circuit court did not believe Jurjens, the application of *Strickland* and *Hill's* prejudice prong is relatively simple: the court of appeals was correct in concluding that he was not prejudiced by the failure of counsel to share the first, inferior offer. Nor can I say that the court was unreasonable in concluding that Jurjens's plea was voluntary, given its discussion of the thoroughness of the colloquy and lack of prejudice from the failure to receive the first offer.

### b. Other issues raised to state courts

Between the several claims in his petition, Jurjens raises other grounds in an effort to show that his plea was involuntary. The court of appeals did not provide an analysis of these issues, instead stating only that a review of all of the materials showed no meritorious issues. *Jurjens*, 2013 WL 12183508, at *1. The lack of a rigorous analysis of each individual issue does not change the deference standard I must apply. *See Johnson v. Williams*, 568 U.S. 289, 300–01 (2013).

For instance, Jurjens says that he was not competent at both his plea hearing and sentencing because of various physical injuries he had sustained and psychotropic medications he was taking.[3] But the court specifically asked Jurjens about his medications and competency at the plea hearing, and Jurjens maintained that he understood the proceedings. His prior statements, coupled with his undeveloped argument in his briefing, gives me no reason to conclude that the court of appeals's ruling was unreasonable.

Jurjens also contends that his plea was involuntary because he was not made aware that under Wisconsin law, he was waiving nonjurisdictional defects occurring before the plea. In

---

[3] Jurjens raises this claim about his sentencing directly in his petition, but discusses his competency at the plea hearing only in his brief. I will consider both aspects of this claim.

particular, Jurjens contends that he did not know that he would no longer be able to challenge (1) Huh's failure to tell him that he could challenge the probable-cause determination for individual claims at the preliminary hearing;[4] and (2) the circuit court's refusal to let Jurjens represent himself. But the Court of Appeals for the Seventh Circuit has previously rejected this type of argument, stating that an otherwise voluntary plea is not invalidated by the failure to inform a defendant that his plea may foreclose appellate argument about pre-plea rulings. *See United States v. Adams*, 746 F.3d 734, 746 (7th Cir. 2014) ("'[w]e have previously held that the trial court is not obligated to inform defendants of the consequences of an unconditional plea on a potential appeal.'" quoting *United States v. Adigun*, 703 F.3d 1014, 1020 (7th Cir. 2012)).

And in any event, Jurjens's pre-plea defect arguments are meritless, even under a de novo review, which is the standard that applies because the court of appeals did not consider those issues in its opinion. There is no indication that Jurjens developed his probable-cause argument in the state courts; his Wisconsin Supreme Court brief mentions the claim only in an extremely conclusory fashion. And his contention about being denied a request to represent himself is not borne out by the record. At no point did he "clearly and unequivocally" raise the right to self-representation. *Freeman v. Pierce*, 878 F.3d 580, 587 (7th Cir. 2017); *United States v. Campbell*, 659 F.3d 607, 612 (7th Cir. 2011), *vacated on other grounds*, 568 U.S. 802 (2012).

---

[4] It is possible that Jurjens's contention, addressed below, that he could not logically be guilty of the "burglary to commit battery" charge because he lived with the victim, is meant to support the claim that counsel failed to inform him that he could challenge the probable-cause determination for individual claims. But if that is what Jurjens means, there is no indication that he raised this argument in his state-court proceedings, so I cannot consider it as part of this habeas petition-in-chief. Instead, I consider it below as a brand-new claim under the "actual innocence" gateway to bringing procedurally defaulted claims.

12

He mentioned self-representation only as a potential option in the context of a request for new appointed counsel, and at a hearing on that request, he went along with the court construing his letter as asking for new counsel, rather than a request that he proceed pro se. Dkt. 15-5, at 49.[5]

**2. Excessive sentence**

Jurjens contends that the court's total sentence of 45 years (27 years of initial confinement and 18 years of extended supervision) was unconstitutionally excessive. Jurjens cites various federal and state provisions for his claim that his sentence was excessive. The appropriate way to consider this claim is as one under the Eighth Amendment. *See Solem v. Helm*, 463 U.S. 277, 288 (1983) (sentence violates Eighth Amendment if it is extreme and "grossly disproportionate" to crime).

The Supreme Court has explained that, "'[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare,'" *Solem*, 463 U.S. at 290–91 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1984)). Where a non-capital conviction is at issue, "'[punishment] that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion.'" *Henry v. Page*, 223 F.3d 477, 482 (7th Cir. 2000) (quoting *United States v. Vasquez*, 966 F.2d 254, 261 (7th Cir. 1992)).

---

[5] Jurjens mentions an additional possible ground regarding the voluntariness of his plea that was *not* raised to the state courts—that the plea deal did not mention that he was being charged as a habitual criminal. Jurjens has defaulted on this claim, but even if he had not, the claim is meritless because the trial court discussed the habitual-criminal enhancements on each charge during the plea hearing, went on to confirm the details of his repeater status, and obtained Jurjens's concession that the enhancement applied to him. *See* Dkt. 15-5, at 28–45.

I agree with the court of appeals that Jurjens fails to show that his sentence is excessive.[6] The court of appeals explained that the trial court appropriately focused on the severity of the offenses and Jurjens' criminal history:

> Regarding the severity of the offenses, the court described Jurjens' conduct as having created "nothing less than a night of absolute terror" for the victim and her children, and noted that the psychological effects of the assault were likely to be long-lasting. With respect to Jurjens' character—which the court called "abysmal"—the court went through Jurjens' lengthy criminal record in detail, emphasizing the number of violent episodes and Jurjens' multiple failures to follow through on previously ordered treatment programs, and further noting that Jurjens was still attempting to blame others for his own conduct. The court then identified the two primary sentencing goals in this case as retribution and incapacitation, explaining that Jurjens' record demonstrated that neither rehabilitation nor deterrence were realistic expectations. The court concluded that Jurjens was one of the most dangerous individuals to come before it, and that the only way the court could ensure public safety would be to incarcerate him for a substantial length of time.

*Jurjens*, 2013 WL 12183508, at *2. Nothing in this discussion suggests that the trial court abused its discretion; rather, it properly considered appropriate reasons for giving a defendant a long sentence.

---

[6] The court of appeals did not explicitly cite federal Eighth Amendment cases in considering this claim, but it did conclude that "the sentences imposed here were not 'so excessive and unusual and so disproportionate to the offense[s] committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.'" *Jurjens*, 2013 WL 12183508, at *3 (quoting *State v. Grindemann*, 2002 WI App 106, ¶ 31, 255 Wis. 2d 632, 648 N.W.2d 507). There is a rebuttable presumption that the state court adjudicated all of Jurjens's claims on merits, including his federal claims. *See Johnson v. Williams*, 568 U.S. 289, 300 (2013). Jurjens does not attempt to overcome that presumption here.

**C. New evidence and actual innocence**

Jurjens filed a motion asking the court to consider what he considered new evidence in conjunction with his habeas petition: a 2016 affidavit of the victim of the burglary, Kimberly Maass, who states that Jurjens had been living with her for about two weeks prior to the incident, and that he had keys to the apartment. *See* Dkt. 33-2. I previously ruled that this court could not consider this new document to determine whether the Wisconsin Court of Appeals reasonably applied federal law in denying his appeal. Dkt. 32. But I also noted that Jurjens seemed to intend for this evidence to form the basis for an entirely new claim: that his trial counsel was ineffective for allowing him to plead guilty to a crime that he could not have committed—burglarizing a place he had permission to enter.[7] *Id.* Jurjens followed my order with a document titled "supplemental claim for writ of habeas corpus," in which he indeed states his intention to bring a new ineffective-assistance-of-counsel claim of "actual innocence." Dkt. 33.

The United States Supreme Court has not yet recognized a prisoner's right to bring a standalone claim of "actual innocence." *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015) (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993)). But I take him to mean that his claim of actual innocence is necessary to allow him to include a new, procedurally defaulted ineffective-assistance-of-counsel claim in this habeas petition. I agree with him on that point, because he has not exhausted his state-court remedies on a claim regarding the 2016 affidavit. I also conclude that he could not take this claim to the state courts at this point because Wisconsin courts would consider this claim to be procedurally barred.

---

[7] The relevant element of the Wisconsin burglary statute is that the defendant enters a place "without the consent of the person in lawful possession." Wis. Stat. 943.10(1m) (2009– 10).

That is because the evidence he calls new is merely a restatement of evidence that was already known to him earlier: both parties agree that, in an original police report from the March 2010 incident, Maass stated that she and Jurjens lived together.[8] *See, e.g.*, Dkt. 23 at 1; Dkt. 25 at 2. I take Jurjens to be saying that he did not know that Maass said that at the time of his plea—although I note that he did say at his plea hearing that he read "police reports, charging documents, things like that." Dkt. 15-5, at 35.

But even assuming that Jurjens did not know about Maass's statement in the police report before pleading guilty, he did know about it before he filed his counseled postconviction motion, and before he contested his no-merit appeal. Jurjens states that he received his trial file from Attorney Russell Hanson on June 12, 2011, Dkt. 22, at 10–11, and that when he received the file, he discovered that Attorney Hanson had the 2010 police report before the plea, Dkt. 30, at 1. Wis. Stat. § 974.06(4) bars a defendant from bringing postconviction claims, including constitutional claims, under § 974.06 if the defendant could have raised the issues in a previous postconviction motion or on direct appeal, unless the defendant has a "sufficient reason" for failing to do so. *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 181–82, 517 N.W.2d 157 (1994). Jurjens offers no explanation as to why he failed to raise this issue in postconviction proceedings or appeal. Because of this procedural default, Wisconsin courts would not let him bring his new claim now.

But that does not end the analysis. Procedural default can be overcome by establishing that a miscarriage of justice will result if this court does not consider his new claim, and Jurjens says that Maass's statements show that he is actually innocent of burglary to commit battery,

---

[8] That report is not itself part the record before this court.

because he had her consent to be there. The actual innocence gateway to excusing procedural default "is demanding and permits review only in the 'extraordinary' case." *Blackmon v. Williams*, 823 F.3d 1088, 1100–01 (7th Cir. 2016). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). In the plea context, the reviewing court must consider the government's proffer regarding the factual basis for the plea. *Bousley v. United States*, 523 U.S. 614, 624 n.3 (1998). The plea transcript shows that the prosecutor here relied on the criminal complaint. Dkt. 15-5, at 43. The petitioner must "persuade the district court that it is 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (quoting *Schlup*, 513 U.S. at 327).

I conclude that Jurjens fails to make this showing. Although the criminal complaint is not part of our record, the Wisconsin Court of Appeals explained the allegations as follows:

> According to the initial complaint, Jurjens had broken a window to gain entry into the home of a woman with whom he had a prior relationship after she refused to communicate with him any longer that evening.

*Jurjens*, 2013 WL 12183508, at *1. As the court of appeals also noted, Jurjens explicitly agreed with the complaint's version of the facts at the time of his plea. *Id.* at 1. Maass's initial statement to police mentioned that Jurjens had been living with her. And Jurjens argues that Maass's affidavit supports the earlier statement. But Maass's statement is that she permitted Jurjens to live there and that he had keys, not that she permitted him in that night. The affidavit does not reconstruct the details of the incident itself, other than to say that "Ralph decided to stay at his mom's house as we were discussing a living situation to not upset his

parole officer." Dkt. 33-2. The 2016 affidavit does not say that Maass permitted him into the apartment that night, nor does Jurjens say that the 2010 police report says that. The broken window supports the idea that Jurjens's entry was forced. In his habeas brief he says that he "broke a window in anger, lost his temper, this is domestic disturbance, not burglary." Dkt. 18, at 21. So he has an alternate explanation of events, but the Maass affidavit does not lend much support to it. He simply has not provided the type of striking new evidence contemplated in *Schlup* that would be necessary to show that he was actually innocent of the offense.

### D. Certificate of appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not a close one. For the reasons stated, reasonable jurists would not debate whether Jurjens is entitled to relief under § 2254. Therefore, I will not issue him a certificate of appealability. He may seek a certificate from the court of appeals under Fed. R. App. P. 22.

ORDER

IT IS ORDERED that:

1. The parties' joint motion to consent to a magistrate judge hearing the case, Dkt. 14, is DENIED.

2. Petitioner Ralph H. Jurjens's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED.

3. The clerk of court is directed to enter judgment in favor of respondent and close the case.

4. Jurjens is DENIED a certificate of appealability. He may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered July 27, 2018.

BY THE COURT:

/s/
_____

JAMES D. PETERSON
District Judge